UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTT S. MARTIN,

                         Plaintiff,

v.                                                      5:15-CV-0239
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

SEVERANCE, BURKO, SPALTER                                LOUIS R. BURKO, ESQ.
& MASONE, P.C.
  Counsel for Plaintiff
16 Court St.
Brooklyn, NY 11241

U.S. SOCIAL SECURITY ADMIN.                             GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 18.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Scott S. Martin

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 16, 19, 22.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on July 7, 1975.  (T. 76.)  He completed the 11th grade.  (T. 180.)  Generally, Plaintiff's alleged disability consists of "stomach spasms," arthritis, seizures, and anxiety.  (T. 179.)  His alleged disability onset date is July 1, 2010. (T. 76.)  His date last insured is September 30, 2012.  (*Id.*)  He previously worked as a fast food worker.  (T. 20.)

### B.    Procedural History

On February 22, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 76.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 16, 2013, Plaintiff appeared before the ALJ, Marie Greener.  (T. 32-49.) On November 8, 2013, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-25.)  On January 30, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-21.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2012 and Plaintiff had not engaged in substantial gainful activity since July 1, 2010. (T. 14.) Second, the ALJ found that Plaintiff had the severe impairments of gastrointestinal bleeding with abdominal pain, anemia, hypertension, headaches, right foot pain-status post fusion, and seizures of an unknown etiology. (T. 15-17.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (T. 17.)[1] The ALJ found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and he must avoid exposure to workplace hazards such as moving machinery and unprotected heights. (T. 17-18.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-21.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's finding that Plaintiff's ankle impairment did not meet or equal the requirements of Listing 1.02(A) was not based on substantial evidence. (Dkt. No. 16 at 10-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

reasons for rejecting the opinion of Plaintiff's treating physician, who opined that Plaintiff was unable to perform sustained work activities, were not supported by substantial evidence. (*Id.* at 13-16.) Third, Plaintiff argues the ALJ's finding that Plaintiff can perform sedentary work was not based on substantial evidence, because such a finding was not supported by the opinions of any physician of record. (*Id.* at 16-18.) Fourth, Plaintiff argues the ALJ failed to properly evaluated Plaintiff's subjective complaints and her credibility finding was not supported by substantial evidence. (*Id.* at 18-21.) Fifth, and lastly, Plaintiff argues the Commissioner failed to sustain her burden of establishing that there was other work in the national economy that Plaintiff could perform as vocational expert ("VE") testimony was needed given Plaintiff's inability to perform the full range of sedentary work and his significant non-exertional limitations. (*Id.* at 21-23.)

## B.    Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues the ALJ properly considered the applicability of Listing 1.02(A). (Dkt. No. 19 at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly considered the opinion of Plaintiff's treating physician. (*Id.* at 5-7.) Third, Defendant argues the ALJ properly determined Plaintiff's RFC. (*Id.* 7-8.) Fourth, Defendant argues the ALJ properly considered Plaintiff's credibility. (*Id.* at 8-9.) Fifth, and lastly, Defendant argues the ALJ properly determined there was other work in the national economy that Plaintiff could perform. (*Id.* at 9-10.)

## C.    Plaintiff's Reply Arguments

Plaintiff filed a reply brief. (Dkt. No. 22.) Plaintiff argues Defendant's argument that the ALJ properly considered Listing 1.02(A) was unresponsive. (Dkt. No. 22 at 2-4

[Pl.'s Reply Mem. of Law].)  Second, Plaintiff argues Defendant mischaracterized Plaintiff's treating physician argument and overlooked Plaintiff's need for frequent medical appointments and procedures.  (*Id.* at 4-6.)  Third, Plaintiff argues Defendant selectively focused on the record regarding the ALJ's RFC determination.  (*Id.* at 6-8.)  Fourth, Plaintiff argues Defendant's claims regarding Plaintiff's credibility was vague, lacked substance, and failed to address the specific issues raised by Plaintiff.  (*Id.* at 8-9.)  Fifth, and lastly, Plaintiff argues Defendant's assertion, that the ALJ's step five determination was proper, failed.  (*Id.* at 9.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.   Listing 1.02(A)

Plaintiff argues that the ALJ's step three determination, that Plaintiff's ankle impairment did not meet or equal Listing 1.02(A), was not supported by substantial evidence. (Dkt . No.16 at 10-13 [Pl.'s Mem. of Law].)

If an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d).  The impairments listed in the Listings are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* at §§ 404.1525(a), 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in the Listings, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without

considering the plaintiff's age, education, and work experience. *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment listed in the Listings, a plaintiff's impairment "must meet all of the specified medical criteria" of the Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove his impairment matches or equals one listed in the Listings is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at §§ 404.1520(e), 416.920(e).

To meet Listing 1.02(A), a plaintiff must have "[m]ajor dysfunction of a joint," which is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.][2]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A).

---

[2] "Inability to ambulate effectively" is defined in simple terms as "extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1,. § 1.00(B)(2)(b)(1). An individual who cannot walk without a walker, two crutches, or two canes; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; carry out routine ambulatory activities such as shopping and banking; and climb a few steps at a reasonable pace with the use of a single hand rail does not ambulate effectively. *See id.* § 1.00(B)(2)(b)(2).

The Listing requires medically acceptable imaging of joint space narrowing, bony destruction or ankyloses of the affected joint; however, the record did not contain any medical imaging pertaining to Plaintiff's foot or ankle. *See Sturick v. Astrue*, No. 5:11-CV-662, 2012 WL 4866457, at *2 (N.D.N.Y. Oct. 12, 2012) (ALJ did not err in determining plaintiff did not meet or equal Listing 1.02(A) because there was no medically acceptable imaging). The ALJ did not err in concluding that Plaintiff's impairment did not meet or equal Listing 1.02(A) because the record contained no imaging of Plaintiff's foot or ankle. Plaintiff must meet all the specified criteria of a Listing and Listing 1.02(A) expressly requires medical imaging. Plaintiff had the burden to prove that he met all the criteria of the Listing and has failed to overcome that burden. *See Berry v. Schweiker*, 675 F.2d 467 ("the claimant bears the burden of the proof as to the first four steps").[3] Therefore, it is recommended that the ALJ's step three determination be upheld.

### B. Treating Physician, Timothy Baxter, M.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's

---

[3] Although the ALJ did not specifically address the lack of medical imaging in his step three analysis, Plaintiff failed to establish that he met all the criteria of the Listing and any error the ALJ may have made would be harmless.

consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight).

On August 4, 2011, Dr. Baxter wrote a letter on Plaintiff's behalf. (T. 305.) Therein, Dr. Baxter stated:

> Due to the number of appointments required for physician appointments and procedures, and the fact that he is unable to work, anyway, because

of all his problem, he will be unable to participate in the First Choices Program[4].

(*Id.*)[5]  The ALJ afforded Dr. Baxter's August 2011 statement "no weight," reasoning that the statement was not supported with an appropriate function-by-function assessment of Plaintiff's work-related abilities, it was not supported by medical evidence in the record, and it was an opinion on an issue reserved to the Commissioner.  (T. 20.)

Plaintiff essentially argues that the ALJ improperly dismissed Dr. Baxter's opinion as an "issue reserved to the Commissioner" when Dr. Baxter was actually stating that Plaintiff was unable to sustain work activities due to his medical regimen.  (Dkt. No. 16 at 14 [Pl.'s Mem. of Law].)  Plaintiff relies on a Ninth Circuit case in which the court held that the ALJ failed to address and give reasons for rejecting the opinion of a treating physician who stated that the plaintiff's impairments made "the likelihood of sustained full time competitive employment unlikely."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).  In *Hill*, the ALJ failed to discuss the treating source's statement in his determination and provided no reasons for rejecting the treating source's statement. *Hill*, 698 F.3d at 11159.  As in the Ninth Circuit, failure to address a treating source statement warrants remand in the Second Circuit.  *Newbury v. Astrue*, 321 F. App'x 16, 17 (2d Cir. 2009) (remand appropriate where the ALJ failed to give any reasons for not crediting two assessments of plaintiff's condition by her treating physician); *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004); *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999) (remand appropriate where the ALJ failed to provide good reasons for not crediting the

---

[4]        The First Choices Program appears to be 'jobs training' program. http://www.csswfny.com/

[5]        The record contains a notation by single decision maker Chritsti Knapp, dated August 2, 2012, indicating that she spoke to Dr. Baxter and he stated that he no longer treated Plaintiff due to Plaintiff's refusal to co-operate with treatment and Plaintiff signing out against medical advice.  (T. 55.)

opinion of a claimant's treating physician); *see also Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998).  However, this case is distinguishable.  Unlike the ALJ in *Hill* and the Second Circuit cases, the ALJ here did discuss Dr. Baxter's letter and provided three specific reasons for affording his opinion no weight.  (T. 20.)

 To be sure, a treating source may provide an opinion as to the number of days per month a plaintiff would miss due to appointments, treatment, or other reasons. Such statements do not go to the ultimate questions of disability, but instead provide an opinion as to the number of days plaintiff may be absent from the workforce due to his impairments.  Such information may then be used by the ALJ in making a disability determination.  Dr. Baxter's statement did not provide a specific number of days, or even an estimation of days, that Plaintiff would be absent.  Here, Dr. Baxter opined that Plaintiff could not participate in a work program because the number of appointments required for treatment and procedures would prevent him from doing so.  (T. 305.)  Dr. Baxter's statement was ultimately a statement of disability.  He essentially opined that Plaintiff would be absent to such a degree as to preclude employment; such a determination is not for a doctor to make, but a determination for the ALJ.

 The record documents multiple hospitalizations between 2010 and 2011; however, the medical record overall did not support Dr. Baxter's statement.  The ALJ discussed Plaintiff's hospitalizations.  The ALJ noted that Plaintiff was hospitalized "on at least eight occasions" between 2010 and 2011.  (T. 18.)  The ALJ noted that the record contained only one hospitalization in April of 2013.  (*Id.*)  Therefore, the ALJ took into consideration Plaintiff's hospitalizations from 2010 and 2011, but also noted that Plaintiff was not hospitalized in 2012 and at the time of the decision in November of

2013 the record noted only one hospitalization. (*Id.*) Therefore, the ALJ properly reasoned Dr. Baxter's statement was not supported by the medical evidence.

The ALJ discussed Dr. Baxter's opinion and provided good reasons for affording the opinion "no weight." Dr. Baxter's statement was ultimately an opinion on an issue reserved to the Commissioner and it was not supported by the medical evidence.

## B. RFC Determination

A plaintiff's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a plaintiff's RFC, an ALJ must consider "all of the relevant medical and other evidence." *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

### i.) Mental RFC Determination

Although the ALJ determined at step two that Plaintiff's mental impairments were non-severe, the ALJ discussed the medical evidence in the record pertaining to Plaintiff's mental impairments at step four.[6] The only evidence in the record containing mental health evaluations and medical source statements was from the State medical consultants, Sarah Long, Ph.D. and M. Mead, Ph.D.

Dr. Long performed a consultative examination on July 31, 2012. (T. 423-426.) Based on her examination, Dr. Long opined that Plaintiff was able to follow and understand simple directions and instructions. (T. 425.) She opined Plaintiff was able

---

[6]     Plaintiff does not argue that the ALJ erred in his step two determination that Plaintiff's mental impairments were non-severe. At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.")

to perform simple tasks independently. (*Id.*) She opined he was able to maintain attention and concentration and maintain a regular schedule. (*Id.*) Dr. Long stated Plaintiff was able to learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and was capable of adequate stress management. (*Id.*) Dr. Long stated that "the nature of [Plaintiff's] physical symptoms might be exacerbated by stress." (*Id.*) Dr. Long also stated that her evaluation was consistent "with possible psychiatric and substance abuse problems that may, at times, interfere with [Plaintiff's] ability to function on a regular basis." (*Id.*)

Dr. Meade reviewed Plaintiff's record as of August 2, 2012. (T. 59.) He completed a mental RFC assessment and noted that Plaintiff did not have limitations in understanding and memory or in concentration and persistence. (*Id.*) He opined Plaintiff had "moderate" limitations in his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 59-60.) Dr. Meade opined Plaintiff was "not significantly limited" in his ability to maintain social appropriate behavior and adhere to basic standards of neatness and cleanliness. (T. 60.)

The ALJ afforded Dr. Long's opinion "significant weight," reasoning she had programmatic expertise, she examined Plaintiff, and her opinion was consistent with the overall medical evidence "including [Plaintiff's] lack of current mental health treatment." (T. 19-20.) The ALJ afforded Dr. Meade's opinion "reduced weight," reasoning his opinion was not consistent with the overall evidence, including Dr. Long's opinion and Plaintiff's lack of treatment. (T. 20.)

14

Plaintiff argues the ALJ erred in his mental RFC analysis because he failed to include mental limitations found by Dr. Long and Dr. Meade. (Dkt. No. 16 at 16 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ's RFC failed to account for Dr. Long's statement that Plaintiff's symptoms "might be exacerbated by stress" and Dr. Meade's conclusion that Plaintiff had "moderate" limitations in his social abilities. (*Id.* at 16.) Plaintiff also argues the ALJ, and Defendant, impermissibly chastised Plaintiff for failing to seek mental health treatment. (*Id.* at 17); (Dkt. No. 22 at 6 [Pl.'s Reply Mem. of Law].)

First, a moderate limitation in the functional area of social interaction would not preclude the ability to do basic work activities. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (ALJ did not err in concluding plaintiff could perform the basic mental demands of unskilled work where "[n]one of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations"); see *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment). Therefore, the ALJ's determination that Plaintiff did not have mental impairments that would preclude unskilled work was not unsupported Dr. Meade's opinion.

Although Dr. Meade opined Plaintiff had moderate limitations in his social abilities, this would not preclude Plaintiff from performing the basic social demands of unskilled work. Further, Dr. Meade ultimately relied on Dr. Long's conclusion that

Plaintiff was capable of performing simple work and complex tasks; could relate adequately with others; make appropriate decisions and manage stress adequately. (T. 73.)

Second, although Dr. Long stated "the nature of [Plaintiff's] physical symptoms might be exacerbated by stress," she ultimately concluded that Plaintiff was capable of performing basic work activities. (T. 425.) Dr. Meade also concluded, based on Dr. Long's examination and medical source statement, that Plaintiff was capable of performing simple work. (T. 60.)

A plaintiff's failure to obtain treatment for mental impairments is not necessarily probative of the severity of a plaintiff's mental impairment. *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 934 (2d Cir. 1984). Here, the ALJ did not discredit Plaintiff's mental impairments for failure to seek treatment. The ALJ noted in his determination that the record lacked any treatment notes pertaining to Plaintiff's mental health, thus indicating to the reviewer that the ALJ considered the evidence she had before her. *Clayton v. Colvin*, 99 F. Supp. 3d 269 (N.D.N.Y. 2015) ("rather than using the lack of medical evidence as substantive evidence, the hearing officer highlighted the absence of this kind of evidence merely as a marker that she considered the evidence she had before her").

Therefore, the ALJ's mental RFC determination was supported by substantial evidence and remand is not recommended.

**ii.)    Physical RFC Determination**

Plaintiff next argues the ALJ erred in her physical RFC determination. (Dkt. No. 16 at 16-18 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to include

limitations found by consultative examiner Look Persaud, M.D. and there was no medical evidence in the record which supported the ALJ's determination that Plaintiff could perform sedentary work. (*Id.*)

An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). For the reasons stated herein, the ALJ's RFC determination was supported by the opinions of Drs. Persaud and Signh.

On June 12, 2012, Dr. Persaud performed a physical examination of Plaintiff and supplied a medical source statement. (T. 417-422.) On examination, Dr. Persaud observed that Plaintiff appeared to be in no acute distress, his gait was abnormal with limping on the right, he was unable to walk on heels and toes due to right foot pain, his squat was half of full, his stance was normal, he used no assistive devises, he needed no help changing for the exam or getting on and off the exam table, and he was able to rise from a chair without difficulty. (T. 419-420.) A musculoskeletal exam was mostly normal, except Plaintiff had limited range of motion in his right foot and ankle. (T. 421.)

In a medical source statement, Dr. Persaud opined that Plaintiff had no restrictions to sitting and standing. (T. 422.) He opined Plaintiff had a "moderate restriction for walking on even surfaces, moderate to marked restriction for walking on

uneven terrain, up inclines, ramps and stairs due to his right foot." (*Id.*) Dr. Persaud

opined Plaintiff had mild restrictions for squatting, kneeling, and crawling. (*Id.*) He

opined Plaintiff had no restrictions for: bending; twisting and turning; or for reaching.

(*Id.*) He opined Plaintiff had moderate restrictions for: lifting; carrying; and pushing or

pulling. (*Id.*) Dr. Persaud opined he had no limitations in: fine motor activities;

speaking; seeing; hearing; or using public transportation. (*Id.*)

Non-examining State agency medical examiner, Nisha Singh, M.D. reviewed

Plaintiff's record as of November 16, 2012. (T. 436-441.) Dr. Singh opined Plaintiff was

capable of light work. (T. 437.)[7] Dr. Singh also opined Plaintiff was capable of sitting

for six hours in and eight hour workday. (*Id.*) Dr. Singh opined Plaintiff could

occasionally perform postural limitations, except he should never climb ladders, ropes,

or scaffolds. (T. 437-438.) He opined Plaintiff had no manipulative limitations or visual

limitations. (T. 438.) He opined Plaintiff had no environmental limitations, except he

should avoid concentrated exposure to vibration. (T. 439.)

The ALJ afforded the opinions of Drs. Persaud and Singh "significant weight" due

to their programmatic expertise and the "relative consistency" of their opinions with the

overall medical evidence. (T. 19) For the reasons stated herein, the ALJ's physical

RFC determination was supported by substantial evidence in the record, specifically the

opinions of Drs. Persaud and Singh.

---

[7]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full
or wide range of light work, you must have the ability to do substantially all of these activities. If someone
can do light work, we determine that he or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§
404.1567(b), 416.967(b).

Although Dr. Singh opined Plaintiff could perform the exertional lifting and carrying demands of light work (T. 437), Dr. Persaud opined Plaintiff had "moderate restrictions" for lifting and carrying (T. 422); therefore, the ALJ's determination that Plaintiff could perform the exertional lifting and carrying demands of sedentary work was supported by these two opinions.

Sedentary work generally requires sitting for six hours in and eight hour workday. SSR 96-9p (S.S.A. July 2, 1996). Dr. Persaud opined Plaintiff had no limitations in his ability to sit and Dr. Singh specifically opined Plaintiff could sit six hours in and eight hour workday; therefore, substantial evidence supported the ALJ's determination that Plaintiff was capable of performing the sitting requirements of sedentary work. (T. 422, 437.) The ALJ limited Plaintiff to occasional postural limitations, which was supported by Dr. Singh's opinion. (T. 428.) Plaintiff argues the ALJ adopted only Dr. Singh's opinion that Plaintiff should avoid workplace hazards; however, this contention must fail. (Dkt. No. 16 at 17 [Pl.'s Mem. of Law].) The ALJ relied on Dr. Singh's opinion regarding Plaintiff's ability to sit for six hours and Plaintiff's postural limitations.

Plaintiff contends the ALJ erred in failing to include in his RFC determination Dr. Persaud's opinion that Plaintiff had "moderate" restrictions to walking on even surfaces and "moderate to marked" limitations for walking on uneven terrain, up inclines, ramps and stairs. (Dkt. No. 16 at 16 [Pl.'s Mem. of Law].) The ALJ ultimately limited Plaintiff to sedentary work, which would limit Plaintiff to standing/walking for two hours in an eight hour workday. The ALJ's limitation to standing/walking for two hours encompassed Dr. Persaud's opinion that Plaintiff had a "moderate" limitation in walking. Further, Dr. Singh reviewed Dr. Persaud's limitations and opined that Plaintiff could "occasionally"

balance and "occasionally" climb ramps and stairs, which the ALJ accounted for in his RFC determination. (T. 17, 438.) The ALJ did not specifically mention Dr. Singh's opinion that Plaintiff could "never" climb ladders, ropes, or scaffolds. (T. 438.) Any failure to include those specific postural limitations would be harmless, because "limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p (S.S.A. July 2, 1996).

Therefore, the ALJ's RFC limiting Plaintiff to sedentary work, with additional postural and environmental limitations, was supported by substantial evidence and remand is not recommended.

### C. Credibility

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not fully credible.  (T. 18.)   In making his credibility determination, the ALJ outlined Plaintiff's testimony, relied on records from Plaintiff's hospitalizations, and relied on the medical opinion evidence in the record.  (T. 18-19.)

Plaintiff argues the ALJ failed to follow the Regulations in making her credibility determination. (Dkt. No. 16 at 20-21 [Pl.'s Mem. of Law].) First, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Second, the ALJ discussed Plaintiff's hearing testimony (T. 18), the ALJ discussed Plaintiff's activities of daily living (T. 16), and the ALJ discussed Plaintiff's hospitalizations and other medical treatment (T. 18-19). Therefore, although the ALJ may not have gone through each factor in the Regulation, it is clear from the ALJ's decision that she properly adhered to the Regulations in making her credibility determination.

Plaintiff argues that the record contained evidence of hospitalizations which was sufficient to show that Plaintiff could not sustain work activities. (Dkt. No. 16 at 19 [Pl.'s Mem. of Law].) Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949

F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). For the reasons discussed herein, the ALJ properly determined that Plaintiff's hospitalizations would not prevent him from performing work activity on a sustained basis.

Plaintiff further argues the ALJ erred in attributing Plaintiff's hospitalizations to "heavy drinking." (*Id.* at 20.) In March of 2010 Plaintiff sought medical treatment for abdominal pain and notations indicated that Plaintiff reported he "drinks usually on the weekends" and "[h]e can drink up to a case of beer." (T. 259.) Notations further stated that Plaintiff appeared to be a binge drinker. (*Id.*) In June of 2011, it was noted that Plaintiff "may be withdrawing from narcotics" because he was "quite agitated and diaphoretic" with the treatment provider. (T. 272.) The ALJ properly considered factors which may have contributed to Plaintiff's need for care. See 20 C.F.R. §§ 404.1529(c)(3)(iii), 416.929(c)(3)(iii). Further, the ALJ did not discount the entirety of Plaintiff's credibility based on these observations. The ALJ's overall credibility determination was supported by substantial evidence.

Plaintiff next argues the ALJ erred in her conclusion that the "only established mental diagnosis in the record is substance abuse in early remission," because Dr. Mead diagnosed Plaintiff with an affective disorder. (Dkt. No. 16 at 20 [Pl.'s Mem. of Law].) Any error was harmless. The ALJ clearly took into consideration Plaintiff's mental impairments in her discussion. The ALJ thoroughly discussed Plaintiff's mental impairments at step two (which the ALJ referred to as anxiety), ultimately determining

they were non-severe. (T.16.) The ALJ further discussed Plaintiff's mental impairments in her RFC analysis, including the opinions of Dr. Meade. (T. 20.)

Plaintiff then argues the ALJ erred in failing to question Plaintiff about his seizures during the hearing. (Dkt. No. 16 at 20 [Pl.'s Mem of Law].) Plaintiff presented to the hearing with counsel. (T. 32.) At the hearing Plaintiff testified that he was unable to work due to a blood disorder and swelling of his feet, he did not mention a seizure disorder. (T. 39.) Plaintiff then provided testimony regarding his mental impairments. (T. 42.) When questioned by his attorney, Plaintiff reported to having pain in his right wrist. (T. 45.) Neither the ALJ nor Plaintiff's attorney questioned Plaintiff about his seizures. *See* 20 C.F.R. § 404.1740(b)(1) (representatives are obligated "to assist the claimant in bringing to [the ALJ's] attention everything that shows that the claimant is disabled"). Despite not having hearing testimony specifically regarding Plaintiff's alleged seizure disorder, there was sufficient evidence in the record upon which the ALJ could make her determination. *See* §§ 20 C.F.R. 404.1513(e), 416.913(e).

Overall, the ALJ did not commit any legal errors in her credibility determination and substantial evidence supported the ALJ's credibility determination. The ALJ adhered to the Regulations as outlined in 20 C.F.R. §§ 404.1529, 416.929. The ALJ properly relied on Plaintiff's testimony (both at the hearing and in written statements provided to the Social Security Administration) and the medical evidence in the record in making her determination.

### D.      Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical

ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir. 2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At step five the ALJ determined that based on Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 20.)[8] Plaintiff argues that the ALJ improperly relied on "the Grids" in making his determination. (Dkt. No. 16 at 21 [Pl.'s Mem. of Law].)

---

[8] For the reasons stated herein, the ALJ's RFC determination was proper and supported by substantial evidence.

The ALJ properly relied on the Grids in making her step five determination.  As the ALJ stated in her step five determination, Plaintiff's additional non-exertional impairments would have little or no effect on the occupational base of unskilled work. (T. 21.) The ALJ properly relied on the guidance of SSR 96-9p in determining that a limitation to performing occasional postural positions would not erode the sedentary occupational base.  (*Id.*)  Finally, the ALJ properly relied on SSR 96-9p in determining that the need to avoid all exposure to work place hazards would not result in a significant erosion of the sedentary occupational base.  (*Id.*)  Therefore, because Plaintiff's additional non-exertional impairments would not significantly erode the occupational base of unskilled sedentary work, the ALJ did not err in relying on the Grids in making her step five determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      July 19, 2016

William B. Mitchell Carter
U.S. Magistrate Judge